ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DARRELL D. MINTER, as RECEIVER, | § | |
| | § | FEB 2 7 2004 |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| GREAT AMERICAN INSURANCE | § | |
| COMPANY OF NEW YORK f/k/a | § | |
| AMERICAN NATIONAL FIRE | § | CIVIL ACTION NO. |
| INSURANCE COMPANY, | § | |
| | § | 3:02-CV-2040-K |
| Defendant, | § | |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| AON RISK SERVICES OF TEXAS, INC., | § | |
| | § | |
| Third-Party Defendant. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Several motions are currently pending before the Court, including summary judgment motions filed by each party in this matter. As a preliminary matter, the Court makes the following rulings: Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment is **DENIED**; the parties' Agreed Motion to Modify Transition Order and Briefing Deadlines is **GRANTED**, and the parties' responsive filings with regards to the motions for summary judgment are deemed timely filed; Plaintiff's Motion to File Supplemental Briefing is **DENIED**; and Plaintiff's Motion to Amend/Correct Complaint is **DENIED**.

Regarding the motions for summary judgment, having considered the merits of the motions, and for the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**; Plaintiff's Motion for Partial Summary Judgment is **DENIED**; and Third-Party Defendant's Motion for Summary Judgment is **DENIED** as moot.

## I.    Background

Plaintiff Darrell D. Minter, as Receiver ("Minter") of Jerry Lee Largent's ("Largent") assets, brings this suit against Defendant Great American Insurance Company of New York f/k/a American National Fire Insurance Company ("Great American") to recover damages in connection with a substantial judgment obtained by Grant Morris ("Morris") against Largent on August 25, 2000.

The underlying case involved a collision which occurred the night of November 9, 1996, in the City of Bridgeport, Wise County, Texas. That night, Largent, who was driving an eighteen-wheeler truck, caused a collision to occur between his vehicle and Morris' vehicle ("the accident"). Largent was intoxicated at the time of the collision, and subsequently pleaded guilty of the offense of driving while intoxicated.

At the time of the accident, Largent was employed by Hammer Trucking, Inc. ("Hammer"). The truck which Largent was driving at the time of the accident was owned by Hammer, which had leased the truck to JTM Materials, Inc. ("JTM"). On or about August 29, 1996, St. Paul Fire & Marine Insurance Company ("St. Paul") issued a business auto policy, a trucker's liability policy and a commercial general liability

- 2 -

insurance policy to JTM.  JTM also held a policy affording excess insurance and/or umbrella coverage issued by Great American in March of 2000.  Both policies were in effect at the time of the accident.

Morris filed suit against Largent in Wise County on May 7, 1997 to recover for his personal injuries suffered as a result of the accident.  Plaintiff in this case claims that although Great American had actual notice of the accident, it did not offer a defense of Largent, as required by the Great American policy.  Instead, Largent defended himself pro se.

The case was tried before a jury on August 14, 2000.  At the close of Morris' case-in-chief, the district court issued a directed verdict in Morris' favor.  The district court submitted only three questions to the jury: (1) the amount of damages suffered by Mr. Morris; (2) whether Largent and Hammer acted with malice; and (3) the amount of exemplary damages to be awarded against Largent and Hammer.  Based on the jury's answers, the district court issued its final judgment on August 25, 2000, in which it awarded Morris actual damages jointly and severally against Largent and Hammer in the amount of $2,633,169.66, plus $869,306.62 in pre-judgment interest.  Additionally, the court assessed exemplary damages against Largent for $1,650,000, and Hammer for $300,000.  The district court entered a post-judgment interest rate of ten percent.

On May 18, 2001, the 43rd District Court of Parker County, Texas, entered an order turning over several of Largent's assets to Minter.  Included in those assets were

Largent's claims or causes of action against St. Paul and Great American for their conduct in connection with the case Morris filed against Largent, including claims based on (1) St. Paul's or Great American's handling or mishandling of the defense of Largent's claims; (2) the insurance policies issued to JTM by St. Paul or Great American; (3) St. Paul's or Great American's bad faith in handling Largent's claims; (4) St. Paul's or Great American's unfair insurance practices regarding Largent's claims; and (5) St. Paul's or Great American's potential liability under the Texas Deceptive Trade Practices Act for their handling of Largent's claims.

Minter sued St. Paul in state court for St. Paul's conduct in the state court action against Largent. St. Paul and Minter settled the controversy for $1,900,000, which exhausted St. Paul's policy obligations to JTM and Hammer. Minter seeks the money still outstanding from the state court's final judgment against Largent and Hammer from Great American, alleging that Great American had a duty to defend Largent and provide coverage for the accident which injured Morris.

Great American brought its third-party complaint against Third-Party Defendant AON Risk Services of Texas, Inc. ("AON"), stating that if this Court determines that Great American is liable to Minter for its conduct in the underlying case against Largent, then AON is liable to Great American in contract and tort for failing to give Great America notice of the suit against Largent. As this is a diversity action under 28 U.S.C.

§ 1332(a), and the underlying events occurred in Texas, it is undisputed that Texas law applies.

## II.    Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

## III.    Whether Coverage Exists Under the Great American Policy

Great American argues that Largent was not covered by the Great American policy at the time of the accident. Under Texas law, an insured has the burden of establishing

coverage under the policy. *See Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 854 (5th Cir. 2003). As receiver of Largent's assets, Plaintiff bears the burden of showing coverage as Largent would. If coverage is established, the insurer bears the burden of showing that an exclusion applies. *See id.* Mere disagreement by the parties over the interpretation of a provision does not make the provision ambiguous or create a question of fact. *See id.*

The Great American policy contains the following provisions under Section II, entitled "Who Is An Insured":

B.    Each of the following is also an "Insured":

   1.    Your employees, other than your executive officers, but only for acts within the scope of their employment by you....

   5.    Any other person or organization who is insured under any policy of "Underlying Insurance." The coverage afforded such "Insureds" under this policy will be no broader than the "Underlying Insurance" except for this policy's Limit of Insurance.

It is undisputed that the St. Paul policy provides the "underlying insurance" reference in paragraph 5. Therefore, if Largent is covered by the Great American policy, it is either as an employee of JTM acting within the scope of his employment or as a person otherwise covered under the St. Paul policy.

**A.    Largent was acting outside the scope of his employment.**

The trial court in the underlying case granted a no evidence motion for summary judgment in favor of JTM on the issue of whether Largent was acting within the course and scope of his employment when the accident occurred. In *Morris v. JTM Materials, Inc. and DCV, Inc.*, 78 S.W.3d 28 (Tex.App.–Fort Worth 2002, no pet.), the Fort Worth Court of Appeals reviewed the decision of the trial court. Its holding affirmed the ruling of the trial court that Largent was not acting within the scope of his employment at the time of the accident, simply stating that "there is no evidence in record that [Largent] was in the course and scope of his employment when the accident occurred." *Id.* at 48. The court based its decision on the fact that Largent went on a personal errand when he went to his sister's house, thus rebutting any presumption that he was acting within the course and scope of his employment at the time of the accident. *See id.*

Because the issue of whether Largent was acting within the course and scope of his employment has already been determined by the Fort Worth Court of Appeals, the doctrine of collateral estoppel prevents the Court from reconsidering the issue. Collateral estoppel applies if four conditions are met: (1) the issue in the subsequent action must be identical to the issue litigated in the prior action; (2) the issue must have been fully and vigorously litigated in the earlier action; (3) the issue must have been necessary to support the judgment in the previous case; (4) there must be no special circumstances that would render preclusion inappropriate or unfair. *See Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458 n. 4 (5th Cir. 2003). The party

seeking to invoke collateral estoppel has the burden of proving the elements of the doctrine. *See Welch v. Hrabar*, 110 S.W.3d 601, 606 (Tex.App.–Houston [14th Dist.] 2003, pet. denied).

Each of the four elements applies in this case. First, the issue of whether Largent was an employee of JTM acting within the scope of his employment was decided by the Fort Worth Court of Appeals and is presently before this Court. Second, Largent contested that he was acting within the course and scope of his employment by presenting an affidavit which the court of appeals took into account. Additionally, the issue of whether Largent was acting within the course and scope of his employment was necessary to the court's granting summary judgment in JTM's favor on the issue of JTM's liability to Morris on the common law doctrine of respondeat superior. Finally, the Court finds no special circumstances that would render the application of collateral estoppel unfair. Therefore, collateral estoppel applies, and as a matter of law Largent was not acting within the course and scope of his employment.

Plaintiff contends that even if Largent was not actually acting within the scope of his employment, he was a statutory employee of JTM, and as such, should be "deemed" as acting within the scope of his employment at the time of the accident. Plaintiff bases his argument on the "Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980" ("the MCS-90 endorsement") included in the St. Paul policy. The MCS-90 endorsement

must be attached to any liability policy issued to a registered motor carrier pursuant to 49 U.S.C. §§ 13906(a)(1), 31139(b)(2) and 49 C.F.R. § 387. *See T.H.E. Ins. Co. v. Larsen Intermodal Services, Inc.*, 242 F.3d 667, 670 (5th Cir. 2001).

The MCS-90 endorsement required St. Paul to pay, up to $1,000,000, "any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not ... such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere." Essentially, the MCS-90 endorsement requires an insurer to pay a victim of an insured's negligence, whether or not the insured was acting within the scope of its employment or not. *See Price v. Westmoreland*, 727 F.2d 494, 496 (5th Cir. 1984) (holding that an interstate carrier is vicariously liable as a matter of law for a driver's negligence and that the traditional common-law principles of respondeat superior do not apply).

The Fort Worth Court of Appeals held that due to the MCS-90 endorsement, JTM was vicariously liable as a matter of law for Largent's negligence if it was an interstate carrier, whether or not he was acting within the scope of his employment. *See Morris*, 78 S.W.3d at 43. Nevertheless, section II.B.1 of the Great American policy explicitly states that only the following are insured: "Your employees, other than your executive officers, but only for acts within the scope of their employment by you."

- 9 -

Therefore, even if Largent is considered a statutory employee of JTM, the express terms

of the Great American policy – a policy separate and independent of the St. Paul policy

– require that the employee must be acting within the scope of his employment in order

for coverage to exist under section II.B.1.  Accordingly, the MCS-90 endorsement does

not establish coverage for Largent under section II.B.1 of the Great American policy.

Because Largent was not acting within the course and scope of his employment,

he cannot be considered a covered insured based upon section II.B.1 of the Great

American policy.  Therefore, Plaintiff can only meet his burden of establishing coverage

under the Great American policy through section II.B.5, which says that if Largent is

insured under the St. Paul policy, he is an insured under the Great American policy.

**B.      Whether Coverage Exists Under the St. Paul Policy**

Plaintiff argues that coverage exists based on four independent grounds: (1) the

"permissive user" clause in the St. Paul policy; (2) the "Exclusive Use" clause in the

JTM-St. Paul policy; (3) the "TE 99-16 endorsement" attached to the St. Paul; and (4)

the "MCS-90 endorsement" attached to the St. Paul policy.  The Court will analyze each

ground in turn.

**1.      The Permissive User Clause**

In the St. Paul policy, under the section titled "Who Is An Insured," the policy

states that anyone, "while using with your permission a covered auto you own, hire, or

- 10 -

borrow," is covered by the St. Paul policy. Plaintiff contests that Largent used the truck with JTM's permission, meaning Largent is covered under the JTM policy.

Under Texas law, that clause in the St. Paul policy makes Largent an "omnibus insured" if he used the vehicle with the permission of JTM. *See Old American County Mut. Fire Ins. Co. v. Renfrow*, 90 S.W.3d 810, 817 (Tex.App.–Fort Worth 2002, no pet.). For the purposes of the clause at issue, permission means consent to use the vehicle at the time and place in question *and* in a manner authorized by the named insured, either express or implied. *See id.* (internal citation omitted) (emphasis added). Express permission to operate a vehicle must be affirmatively stated, while implied permission may be inferred from a course of conduct or a relationship between the parties in which there is mutual acquiescence or lack of objection which signifies consent. *See Royal Indem. Co. v. H.E. Abbot & Sons, Inc.*, 399 S.W.2d 343, 345 (Tex. 1966).

In order to meet his burden of establishing coverage, Plaintiff first points to the underlying judgment, which states that "Jerry Lee Largent had permission to use the equipment involved in the collision on November 9, 1996," and "Hammer Trucking, Inc. had given such permission to Jerry Lee Largent to use that equipment." However, collateral estoppel does not prevent the Court from considering the issue. As discussed above, one of the requirements necessary for collateral estoppel to apply is that the issue must have been fully and vigorously litigated in the prior case. The Court will give prior adjudication of an issue estoppel effect only if it was adequately deliberated and firm.

*See Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991). Factors the Court considers in making this determination include whether (1) the parties were fully heard and (2) the court supported its decision with a reasoned opinion. *See id*. As stated above, the party wishing to invoke collateral estoppel has the burden of presenting sufficient evidence to show that the doctrine is applicable. *See Welch*, 110 S.W.3d at 606.

The evidence before the Court demonstrates that Morris' case against Largent was barely contested, let alone "vigorously litigated." Largent's only participation in the underlying trial against him was as a witness for Morris. Largent failed to respond to Morris' motion for partial summary judgment, did not participate in the pretrial hearing, jury selection, opening and closing statements, or cross examination of Morris' witnesses, and the only answer filed in Morris' lawsuit was by the attorney who originally represented Hammer, who eventually withdrew from the case. Additionally, the state court's judgment did not explain how it reached its holding that Largent had Hammer's permission to operate the truck at the time of the accident. Taking this evidence into account, Plaintiff has not met his burden of demonstrating that the issue was fully and fairly litigated in the underlying case. Accordingly, the Court is not collaterally estopped from analyzing the issue here.

Plaintiff argues that even if collateral estoppel does not apply, the evidence shows that Largent had JTM's permission to use the vehicle pursuant to the vehicle lease between Hammer and JTM. In the lease, Hammer, as Owner-Operator Lessor, assumed

the responsibility of maintaining the vehicle which was leased to JTM, as the Company Lessee. Through the lease, JTM granted permission to Hammer and its employees to maintain the truck, which gave Hammer the right to ask Largent to perform duties regarding the maintenance of the truck.

At the state court trial, Largent testified, and Great American does not contradict, that Largent was instructed by Hammer to have the truck at Hammer's maintenance yard by Sunday, November 10, 1996, so that maintenance work could be performed on it. Therefore, Largent did have express permission to drive the truck to Hammer's yard at the time and place in question and in a manner authorized by Hammer. Instead of driving the truck to Hammer's yard, however, Largent testified that he drove the truck to his sister's house in order to ask her to follow him to Hammer's yard, then give him a ride back to his home. When Largent arrived at his sister's house, he discovered she was not there, so he decided to drive the truck back to his home. It was then that the accident occurred.

Driving to his sister's house was outside the scope of the permission expressly granted to Largent, as he was only given express permission to take the truck to the maintenance yard. Additionally, Largent had been drinking when he drove the truck to his sister's house, which Hammer and JTM expressly prohibited its drivers from doing. Therefore, at the time of the accident, Largent did not have express permission to either take part in a personal errand or operate the vehicle under the influence of alcohol.

- 13 -

Because express permission necessarily requires the company's consent to use the vehicle at the time and place in question and in a manner authorized by the owner, Largent met neither requirement, and therefore was not acting within the scope of any express permission at the time of the accident.

Without express permission, the only other way Plaintiff can establish coverage under the permissive user clause is through the implied permission of JTM and Hammer to operate the truck at the time and place of its operation, and in the manner he operated it. Implied permission may be inferred from a course of conduct or a relationship between the parties in which there is mutual acquiescence or lack of objection which signifies consent. *See Royal Indem. Co.*, 399 S.W.2d at 345. Plaintiff does not present any evidence that Hammer or JTM, through mutual acquiescence or lack of objection, ever allowed Largent to drive the truck while intoxicated. Therefore, Plaintiff has not established that Largent had implied permission to operate the vehicle at the location of the accident or in an intoxicated state at the time of the accident.

Although Largent did not act within the parameters of the express permission granted him by JTM and Hammer, if his deviation from that permission was only a "minor deviation," coverage would not be precluded under the St. Paul policy. *See Renfrow*, 90 S.W.3d at 815. Under the "minor deviation" rule, protection will be afforded unless the use is a material or gross violation of the terms of the initial permission. *See id*. In analyzing a case under the minor deviation rule, the Court takes

- 14 -

into account the extent of the deviation in actual distance or time, the purposes for which the vehicle was given, and other factors necessary to determine whether the deviation was "minor" or "material." *See id.* at 816 (internal citations omitted).

Largent deviated from the express permission granted to him by driving to his sister's house while intoxicated. Had Largent only driven the truck to his sister's house, the deviation might have been minor, as the trip was allegedly related to his bringing the truck in for maintenance at Hammer's request. However, Largent's operation of the truck while intoxicated was so far outside of the express permission granted to him by JTM and Hammer that his deviation was material as a matter of law. *See James v. Vigilant Ins. Co.*, 674 S.W.2d 925, 927 (Tex.App.–Amarillo 1984, writ ref'd n.r.e.) (holding that a court may conclude that a deviation is minor as a matter of law, material as a matter of law, or that a fact issue exists as to the extent of the deviation). Plaintiff cannot rely on the "minor deviation" rule to establish coverage.

Therefore, as Plaintiff has the burden of establishing coverage, the lack of evidence of any permission granted to Largent is fatal to his attempt to establish coverage under the permissive user clause of the St. Paul policy. If coverage is to exist in this case, it must be on other grounds.

2.    **The Exclusive Use Clause**

In addition to the permissive user clause, Plaintiff argues that another portion of

the "Who Is An Insured" section establishes that the St. Paul policy covered Largent. The section reads:

> d.　the owner or anyone else from whom you hire or borrow a covered auto that is not a trailer while the covered auto:
>
> (1)　Is being used exclusively in your business as a trucker, and
>
> (2)　Is being used pursuant to operating rights granted to you by a public authority.

In order to be covered under this section, then, Largent must be either the owner of the truck or "anyone else" from whom JTM hired or borrowed the truck from.

Plaintiff offers no evidence that Largent owned the truck which was leased to JTM, or that he had any sort of interest in it whatsoever. As Plaintiff has the burden of establishing coverage, some evidence must be submitted to the Court to satisfy his burden. Plaintiff fails to do so here.

### 3.　The TE 9916 Endorsement

Additionally, Plaintiff argues that an endorsement added to the St. Paul policy, the TE 9916 endorsement, establishes that Largent is a covered insured under the St. Paul policy. The endorsement states that "[w]hile any covered auto described in the Schedule or in the Declaration is rented or leased to you and is being used by or for you, its owner or anyone else from whom you rent or lease it is an insured but only for that covered auto."

- 16 -

As is the case with the exclusive use clause in the St. Paul policy, Plaintiff offers no evidence that Largent owned the truck which was leased to JTM, or that he had any sort of interest in it whatsoever.  As Plaintiff has the burden of establishing coverage, some evidence must be submitted to the Court to satisfy this burden.  Plaintiff fails to do so here.

### 4.  The MCS-90 Endorsement

Plaintiff's final attempt at establishing coverage relies on the MCS-90 endorsement attached to the St. Paul policy.  As discussed above, while Largent's prospective status as a statutory employee does not affect his coverage under section II.B.1 of the Great American policy, section II.B.5 of the policy affords coverage to "[a]ny other person or organization who is insured under any policy of 'Underlying Insurance.'"

Plaintiff laboriously cites a plethora of authority to support the proposition that the MCS-90 endorsement causes Largent to be a statutory employee of JTM, and thus operates as additional insurance coverage for an insured.  However, the case law interpreting the MCS-90 endorsement clearly establishes the error of Plaintiff's position.  The purpose of the MCS-90 endorsement is not to offer more insurance to employees of an insured, but to protect the public.  The Fifth Circuit Court of Appeals has stated that the endorsement creates a suretyship by the insurer to protect the public – a safety net – which simply covers the public when other coverage is lacking.  *See T.H.E.*, 242

- 17 -

F.3d at 672 (citing *Canal Ins. Co. v. Carolina Cas. Ins. Co.*, 59 F.3d 281, 283 (1ˢᵗ Cir. 1995).

Recognizing the policy justifications behind the MCS-90 endorsement, the Fifth Circuit in *T.H.E.* held that the endorsement accomplishes its purposes by reading out clauses in the policy which would limit the ability of a third party victim to recover from his loss. *See T.H.E.*, 242 F.3d at 673. However, the court went on to state that there is no need for or purpose served by the reading out of clauses insofar as it affects the insured or other insurers who "clamor for part or all of the coverage." *Id.* In its decision, the court noted the language of the MCS-90 endorsement, which states that "all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company." Therefore, the Fifth Circuit held that when the protection of an injured member of the public is not at stake, the MCS-90 endorsement and the relevant federal regulations do not address coverage for the purpose of disputes between the insured and the insurer. *See id.* Indeed, the court unequivocally stated that the MCS-90 endorsement does not alter the existing policy obligations between the insured and an insurer. *See id.* at 674.

In this case, Plaintiff is suing Great American as a receiver of Largent's assets, and thus from Largent's shoes in his claims against Great American. As noted above, the MCS-90 endorsement attached to the St. Paul policy clearly states that "all terms, conditions, and limitations in the policy to which the endorsement is attached shall

remain in full force and effect as between the insured and the company." Therefore, the MCS-90 endorsement does not expand the insurance coverage as to Largent. According to the terms of the MCS-90 endorsement, it only serves to protect the public "from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980." The lack of an independent basis of coverage through the MCS-90 endorsement is also evident in the fact that the endorsement requires an insured to reimburse the insurer for any payment that the insurer would not have been obligated to pay except for the agreement contained in the MCS-90 endorsement. *See T.H.E.*, 242 F.3d 667.

Therefore, while the MCS-90 endorsement provides coverage to injured third-parties in instances where no coverage would otherwise exist, the endorsement does not act as an independent basis for coverage for Largent under the St. Paul policy. As the relationship between Largent and St. Paul is not affected by the MCS-90 endorsement, Minter, as receiver, has not met his burden of establishing coverage under the Great American policy simply because the MCS-90 endorsement was attached to the St. Paul policy.

Therefore, Plaintiff has failed to meet his burden of establishing coverage for Largent under the Great American policy on any ground.

## IV.   The Effect of No Coverage

Plaintiff claims that Great American is liable to him, as receiver of Largent's

assets, for breach of the Great American policy, indemnity under the policy, bad faith, malice, violating article 21.21 of the Texas Insurance Code and the violating the Texas Deceptive Trade Practices Act. Great American's motion seeks summary judgment on all of Plaintiff's causes of action, arguing that without coverage, Plaintiff cannot prevail in this case.

Without coverage under the policy, Great American had no duty to defend Largent, even if it had notice of the underlying state court action, which Great American disputes. *See Gulf States Ins. Co. v. Alamo Carriage Service*, 22 F.3d 88, 90 (5th Cir. 1994) (holding that if the insurance policy did not cover the insured's injury or damage, then the insurer did not owe a duty to defend). Without a duty to defend, there exists no duty to indemnify. *See American Nat. General Ins. Co. v. Ryan*, 274 F.3d 319, 324 (5th Cir. 2001) (holding that under Texas law, if an insurer does not have a duty to defend an insured, then the insured does not have a duty to indemnify the insured). Because Largent was not covered under the Great American policy, Plaintiff cannot recover damages assessed against Largent in the underlying state court action from Great American. Therefore, Great American is entitled to summary judgment as a matter of law on Plaintiff's contractual causes of action against Great American.

Plaintiff's extracontractual causes of action against Great American for bad faith, malice, violations of article 21.21 of the Texas Insurance Code, and violations of the Deceptive Trade Practices Act must also fail. Under Texas law, an insurer is liable for

- 20 -

a breach of the common law duty of good faith and fair dealing if the insurer knows or should know that it is reasonably clear that a claim is covered, but rejects the claim anyway. *See Universe Life Ins. Co. V. Giles*, 950 S.W.2d 48, 56 (Tex. 1997). The question of whether an insurer has acted in bad faith by denying or delaying payment of a claim after the insurer's liability becomes reasonably clear is a question for the fact-finder. *See id.* However, as a matter of law a plaintiff cannot prevail on a bad faith theory of liability if a claim is not covered by the policy in question. *See Ghoman v. New Hampshire Ins. Co.*, 159 F. Supp.2d 928, 935-36 (N.D. Tex. 2001) (citing *Republic Ins. Co. V. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)). Because Plaintiff has not met his burden of establishing coverage, he cannot prevail on his bad faith or malice claims. Therefore, Great American is entitled to summary judgment on each of those claims as a matter of law.

Plaintiff also alleges that Great American violated article 21.21 of the Insurance Code and the DTPA. It is well-settled Texas law that extra-contractual tort claims based on the Texas Insurance Code and the DTPA require the same predicate for recovery as common law bad faith causes of action. *See Watson v. State Farm Lloyds*, 56 F. Supp. 2d, 734, 736 (N.D. Tex. 1999) (citing *Higginbotham v. State Farm Mut. Auto Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997)). As such, an insured cannot prevail on his article 21.21 or DTPA claims if the court concludes that the insured has no cause of action for breach of the duty of good faith and fair dealing. *See Watson*, 56 F. Supp. 2d at 736. Therefore,

because this Court finds that as a matter of law that Plaintiff has no basis for a claim based on Great American's bad faith, Great American is also entitled to summary judgment on the Plaintiff's article 21.21 and DTPA claims.

## V.    Conclusion

For the reasons stated above, Defendant's motion is **GRANTED**, Plaintiff's Motion is **DENIED**, and Third-Party Defendant's Motion is **DENIED** as moot. Judgment shall enter that Plaintiff take nothing in his claims against Great American.

**SO ORDERED**.

February 27, 2004.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE